


<u>VIA ELECTRONIC MAIL</u>

October 22, 2024

Bureau of Land Management
Attn: Lance Purvis (MS-6540), MIB
1849 C St. NW
Washington, DC 20240

RE: Freedom of Information Act Request ("FOIA Request")
EXPEDITED PROCESSING REQUESTED

Mr. Purvis:

    On behalf of the National Shooting Sports Foundation, a non-profit organization with many functions, including research and publication functions, as part of a transparency initiative seeking public records relating to firearms policy and lobbying activities at various agencies at all levels of government, which includes an active campaign of broad dissemination of public information obtained under open records and freedom of information laws to the broader population, pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552 *et seq.*, I hereby request:

1) Any and all memoranda and email communications from October 1, 2023, up to and including October 1, 2024, by, to, from, between, and received by Robert Anderson and/or Joel West Williams that include the words "Bears Ears" and "recreational shooting."

2) Any and all memoranda and email communications from October 1, 2023, up to and including October 1, 2024, by, to, from, between, and received by Robert Anderson and/or Joel West Williams that include the words "Bears Ears" and "shooting."

3) Any and all memoranda and email communications from October 1, 2023, up to and including October 1, 2024, by, to, from, between, and received by Robert Anderson and/or Joel West Williams that include the words "Bears Ears" and "Dingell" or "Dingell Act."

To further narrow this request, please consider as non-responsive any otherwise responsive records that are:

a) Sent to broad distribution lists, e.g., from an email address beginning with info@, and/or media@, press@;
b) Correspondence that merely receives newsletters, press summaries, or "clippings," such as news services, stories or opinion pieces, from the original source;
c) Subscription emails sent from an external party; and/or
d) Automatically generated emails, e.g., out of office replies.

Likewise, you need not produce duplicate copies of records. However, we do request <u>entire threads</u> of which any responsive correspondence is a part, regardless of whether any portion falls outside of the above time parameter.

**NSSF Requests Expedited Processing**

This FOIA request meets the conditions for expedited processing under 43 C.F.R. § 2.20(a)(2), which provides that a requester can demonstrate a "compelling need" for records when there is "an urgency to inform the public about an actual or alleged Federal Government activity and the request is made by a person primarily engaged in disseminating information." The regulation further provides:

(i)     In most situations, a person primarily engaged in disseminating information will be a representative of the news media.

(ii)    If you are not a full time member of the news media, to qualify for expedited processing here, you must establish that your main professional activity or occupation is information dissemination, although it need not be your sole occupation.

(iii)   The requested information must be the type of information that has particular value that will be lost if not disseminated quickly; this ordinarily refers to a breaking news story that concerns a matter of public exigency.

(iv)   Information of historical interest only or information sought for litigation or commercial activities would not qualify, nor would a news media deadline unrelated to breaking news.

*Id.* § 2.20(a)(2)(i)-(iv). Pursuant to under 43 C.F.R. § 2.20(b), NSSF certifies that there is a compelling and urgent need to make the requested records available to the public. To the best of its information and belief, NSSF suspects that the Bureau of Land Management's ("BLM"), and U.S. Department of Agriculture, Forest Service's ("USDA Forest Service", collectively "the Agencies") process for evaluating the availability of recreational shooting under the proposed Resource Management Plan ("RMP") for

Bears Ears Monument has not uncovered any real threat to the land by recreational shooting or properly considered how potential limitations on recreational shooting could be tailored in time and scope to a legitimate problem, which is required by the Dingell Act.

The public urgently needs to know the Agencies' criteria and process for evaluating recreational shooting at Bears Ears Monument, as the Agencies have recently published Proposed RPM/Final Environmental Impact Statement ("Proposed Plan"), and the public protest period ends on November 4, 2024.[1] The Proposed Plan prohibits recreational shooting to *entire* Bears Ears Monument, which is approximately 1.36 million acres.[2]  But, to the best of NSSF's information and belief, the Agencies have not made the proper determinations for recommending total closure of Bears Ears Monument.  The Dingell Act makes clear that in order to close federal land to recreational shooting, "the Secretary concerned shall designate the smallest area for the least amount of time that is required for public safety, administration, or compliance with applicable laws."  16 U.S.C.A. § 7913(a)(2).

The information I request on behalf of NSSF is therefore both of great public interest and timely, given these facts, such that the typical, drawn-out response to a FOIA request will leave the requested public information no longer useful for the purpose of informing proper consideration of the Proposed Plan for Bears Ears Monument.  In other words, the requested records are the "type of information that has particular value that will be lost if not disseminated quickly" because the closures of general public interest and the comment window is short. The Executive Branch cannot be permitted to shield its communications leading up to a sweeping regulatory change limiting recreational shooting on over 1.36 million acres on public land, while simultaneously delaying the release of vital information which the public needs under statutory law to comment on and seek redress for the Executive Branch's overreach.  Indeed, the requester intends to disseminate the information it obtains for various purposes, including to facilitate First Amendment activity by citizens, journalists, and others who might seek to timely petition the government for redress or to educate those affected by proposed governmental activity of the impact of the government's plans while such petitions can have a timely impact.

Moreover, NSSF plainly qualifies as a media requester as shown by the frequency with which we broadly disseminate our work and with which our work is broadly disseminated in the news media (https://nssf.org/) showing an intention and ability to broadly disseminate responsive information.  Indeed, NSSF has already written

---

[1] BLM, USDA Forest Service issue proposed plan for Bears Ears National Monument (Oct. 3, 2024), https://www.blm.gov/press-release/blm-usda-forest-service-issue-proposed-plan-bears-ears-national-monument.

[2] BLM, Proposed Resource Management Plan and Final Environmental Impact Statement, Volume 1: Executive Summary and Chapters 1-5 at ES-10 (Oct. 2024), https://eplanning.blm.gov/public_projects/2020347/200531796/20120443/251020423/BENM_ProposedRMP-FEIS_Vol1_FEIS_508.pdf.

on this topic,[3] which has garnered attention from media.[4] Alternatively, even if NSSF were not considered a member of the "full-time media" it would certainly qualify for expedited processing due to its work informing its members and the public more broadly about the impact of federal regulation on shooting sports, including recreational shooting. The requested records vital to NSSF's goal of providing timely and accurate information regarding proposed changes to recreational shooting on such a significant portion of public land.

**NSSF Requests an Explanation of Exemptions**

Should you decide to invoke a FOIA exemption, please include sufficient information for us to assess the basis for the exemption, including any interest(s) that would be harmed by release.

Please include a detailed ledger which includes:

1. Basic factual material about each withheld record, including the originator, recipients, date, length, general subject matter, and location of each item; and

2. Complete explanations and justifications for the withholding, including the specific exemption(s) under which the record (or portion thereof) was withheld and a full explanation of how each exemption applies to the withheld material. Such statements will be helpful in deciding whether to appeal an adverse determination. Your written justification may help to avoid litigation.

If you should seek to withhold or redact any responsive records or parts thereof, we request that you: (1) identify each such record with specificity (including date, author, recipient, and parties copied); (2) explain in full the basis for withholding responsive material; and (3) provide all segregable portions of the records for which you claim a specific exemption. 5 U.S.C. §552(b). Please correlate any redactions with specific exemptions under FOIA.

These search parameters are sufficiently narrow and precise in their clear delineation for described records over specific dates with specific search terms for email communications and memoranda by, to, from, between, and received by personnel in your office.

---

[3] NSSF, *NSSF Opposes Interior Department Proposal to Close 1.3 Million Acres of Bears Ears National Monument*, https://www.nssf.org/articles/nssf-opposes-proposal-to-close-1-3-million-acres-of-bears-ears-national-monument/.

[4] *See, e.g.,* Julie Jag, The Salt Lake Tribune, *Sporting and firearms groups angered by plan to ban shooting in Bears Ears National Monument* (Oct. 4, 2024), https://www.sltrib.com/news/environment/2024/10/04/blm-ban-target-shooting-bears-ears/ (citing NSSF statement); *see also* Andrew McKean, Outdoor Life, *Final Bears Ears National Monument Plan Bans All Recreational Shooting on 1.3 Million Acres of Federal Land* (Oct. 3, 2024), https://www.outdoorlife.com/conservation/bears-ears-recreational-shooting-ban/ (discussing the impact of the Proposed Plan and demonstrating public interest in the topic).

**NSSF is Owed a Reasonable Search**

FOIA requires an agency to make a reasonable search of records, judged by the specific facts surrounding each request. *See, e.g., Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003); *Steinberg v. DOJ*, 23 F.3d 548, 551 (D.C. Cir. 1994). In this situation, there should be no difficulty in finding these documents.

**The Agency Must Err on the Side of Disclosure**

It is well-settled that Congress, through FOIA, "sought 'to open agency action to the light of public scrutiny.'" *DOJ v. Reporters Comm. for Freedom of Press*, 498 U.S. 749, 772 (1989) (*quoting Dep't of Air Force v. Rose*, 425 U.S. 353, 372 (1976)). The legislative history is replete with reference to the "'general philosophy of full agency disclosure'" that animates the statute. *Rose*, 425 U.S. at 360 (*quoting* S.Rep. No. 813, 89th Cong., 2nd Sess., 3 (1965)). Accordingly, when an agency withholds requested documents, the burden of proof is placed squarely on the agency, with all doubts resolved in favor of the requester. *See, e.g., Federal Open Mkt. Comm. v. Merrill*, 443 U.S. 340, 352 (1979). This burden applies across scenarios and regardless of whether the agency is claiming an exemption under FOIA in whole or in part. *See, e.g., Tax Analysts*, 492 U.S. 136, 142 n. 3 (1989); *Consumer Fed'n of America v. Dep't of Agriculture*, 455 F.3d 283, 287 (D.C. Cir. 2006); *Burka*, 87 F.3d 508, 515 (D.C. Cir. 1996). The act is designed to "pierce the veil of administrative secrecy and to open agency action to the light of scrutiny." *Department of the Air Force v. Rose*, 425 U.S. 352 (1976). It is a transparency-forcing law, consistent with "the basic policy that disclosure, not secrecy, is the dominant objective of the Act." *Id.*

**Withholding and Redaction**

Please identify and inform us of all responsive or potentially responsive records within the statutorily prescribed time, and the basis of any claimed exemptions or privilege and to which specific responsive or potentially responsive record(s) such objection applies. Likewise, if your office takes the position that any portion of the requested record(s) may be exempt from disclosure, please inform us of the basis of any partial denials or redactions, and provide the rest of the record, all reasonably segregable, non-exempt information, withholding only that information that is properly exempt under one of FOIA's nine exemptions. *See* 5 U.S.C. § 552(b). We remind the agency that it cannot withhold entire documents rather than producing their "factual content" and redacting any information that is legally withheld under FOIA exemptions. As the D.C. Circuit Court of Appeals noted, the agency must "describe the factual content of the documents and disclose it or provide an adequate justification for concluding that it is not segregable from the exempt portions of the documents." *King v. Department of Justice*, 830 F.2d 210, at 254 n.28 (D.C. Cir. 1987). As an example of how entire records should not be withheld when there is reasonably segregable information, we note that at bare minimum basic identifying information (that is "who, what, when" information, e.g., To, From, Date, and typically Subject) is not "deliberative."

If it is your position that a document contains non-exempt segments and that those nonexempt segments are so dispersed throughout the documents as to make segregation impossible, please state what portion of the document is non-exempt and how the material is dispersed through the document. *See Mead Data Central v. Department of the Air Force*, 455 F. 2d 242, 261. Further, we request that you provide us with an index all such withheld documents as required under *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1972), with sufficient specificity "to permit a reasoned judgment as to whether the material is actually exempt under FOIA" pursuant to *Founding Church of Scientology v. Bell*, 603 F.2d 945, 959 (D.C. Cir. 1979), and "describ[ing] each document or portion thereof withheld, and for each withholding it must discuss the consequences of supplying the sought-after information," *King v. Department of Justice*, 830 F.2d at 223-24.

Claims of non-segregability must be made with the same practical detail as required for claims of exemption in a Vaughn index. If a record is denied in whole, please state specifically that it is not reasonable to segregate portions of the record for release.

Please provide responsive documents in complete form. Any burden on the agency will be lessened if it produces responsive records without redactions and in complete form.

**Format of Requested Records**

Under FOIA, you are obligated to provide records in a readily accessible electronic format and in the format requested. *See, e.g.*, 5 U.S.C. § 552(a)(3)(B) ("In making any record available to a person under this paragraph, an agency shall provide the record in any form or format requested by the person if the record is readily reproducible by the agency in that form or format."). NSSF respectfully submits that "readily accessible" records will be text-searchable and OCR-formatted. *See* 5 U.S.C. § 552(a)(3)(B).

NSSF does not seek only those records which survive on an employee's own machine or account (re: the electronic communications). Instead, we request records in their native format. The covered information we seek is electronic information, this includes electronic records, and other public information.

**Fee Waiver Request**

**Our request for fee waiver is in the alternative, first for reasons of significant public interest, and second, on the basis of the NSSF's status as a media outlet within the meaning of FOIA due to its regular dissemination of information**.

FOIA was designed to provide citizens a broad right to access government records. FOIA's basic purpose is to "open agency action to the light of public scrutiny," with a

6

focus on the public's "right to be informed about what their government is up to." *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 773-74 (1989) (internal quotation and citations omitted). In order to provide public access to this information, FOIA's fee waiver provision requires that "[d]ocuments shall be furnished without any charge or at a [reduced] charge," if the request satisfies the standard. 5 U.S.C. § 552(a)(4)(A)(iii). FOIA's fee waiver requirement is "liberally construed." *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1310 (D.C. Cir. 2003); *Forest Guardians v. U.S. Dept. of Interior*, 416 F.3d 1173, 1178 (10th Cir. 2005).

The 1986 fee waiver amendments were designed specifically to provide non-profit organizations such as NSSF access to government records without the payment of fees. Indeed, FOIA's fee waiver provision was intended "to prevent government agencies from using high fees to discourage certain types of requesters and requests," which are "consistently associated with requests from journalists, scholars, and non-profit public interest groups." *Ettlinger v. FBI*, 596 F.Supp. 867, 872 (D. Mass. 1984) (emphasis added). As one Senator stated, "[a]gencies should not be allowed to use fees as an offensive weapon against requesters seeking access to Government information" 132 Cong. Rec. S. 14298 (statement of Senator Leahy).

## I. NSSF Qualifies for a Fee Waiver.

Under FOIA, a party is entitled to a fee waiver when "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the [Federal] government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii).

As noted above, NSSF plainly qualifies as a media requester as shown by the frequency with which we broadly disseminate our work and with which our work is broadly disseminated in the news media (https://nssf.org/) showing an intention and ability to broadly disseminate responsive information. Alternatively, the agency must consider four factors to determine whether a request is in the public interest: (1) whether the subject of the requested records concerns "government operations or activities," (2) whether the disclosure "is likely to contribute" to an understanding of government operations or activities, (3) whether the disclosure "is likely to contribute to public understanding" of a reasonably broad audience of persons interested in the subject, and (4) whether the disclosure is likely to contribute "significantly" to public understanding of government operations or activities. As shown below, NSSF and this request meet each of these factors.

### A. The Subject of This Request Concerns "the Operations and Activities of the Government."

The subject matter of this request concerns the activities of the Agencies with regards to the proposed RPM/final EIS's treatment of closures of Bears Ears Monument to recreational shooting.

### B. Disclosure is "Likely to Contribute" to an Understanding of Government Operations or Activities.

As described, above, the requested records inherently are meaningfully informative about government operations or activities and will contribute to an increased understanding of those operations and activities by the public. The requested records pertain to that described in "A", immediately above. Disclosure of the requested records will allow NSSF to convey to the public information about the Agencies' process for recommending total closure of recreational shooting at Bears Ears Monument, as well as whether the Agencies followed the requirement of the Dingell Act to "designate the smallest area for the least amount of time required." 16 U.S.C.A. § 7913(a)(2). Once the information is made available, NSSF will analyze it and present it to its followers and the general public in a manner that will meaningfully enhance the public's understanding of this topic.

### C. Disclosure of the Requested Records Will Contribute to a Reasonably Broad Audience of Interested Persons' Understanding of the Agency's Decision-Making Process for Proposing Total Closure of Recreational Shooting at Bears Ears Monument

For reasons already described, the requested records will contribute to public understanding of the Agencies' process for evaluating the availability of recreational shooting at Bears Ears Monument under the Proposed Plan. As explained above, the records will contribute to public understanding of this topic. *See W. Watersheds Proj. v. Brown*, 318 F.Supp.2d 1036, 1040 (D. Idaho 2004) ("... find[ing] that WWP adequately specified the public interest to be served, that is, educating the public about the ecological conditions of the land managed by the BLM and also how ... management strategies employed by the BLM may adversely affect the environment.").

Through NSSF's synthesis and dissemination (by means discussed in Section II, below), disclosure of information contained and gleaned from the requested records will contribute to a broad audience of persons who are interested in the subject matter, as many of NSSF's followers and supporters look to the organization for accurate, up-to-date news about shooting sports. *See Ettlinger v. FBI*, 596 F.Supp. at 876 (benefit to a population group of some size distinct from the requester alone is sufficient); *Carney v. Dep't of Justice*, 19 F.3d 807, 815 (2d Cir. 1994) (applying "public" to require a sufficient "breadth of benefit" beyond the requester's own interests); *Cmty. Legal Servs. v. Dep't of Hous. & Urban Dev.*, 405 F.Supp.2d 553, 557 (E.D. Pa.2005) (in granting fee waiver to community legal group, court noted that while the requester's "work by its nature is unlikely to reach a very general audience," "there is a segment of the public that is interested in its work").

Indeed, the public does not currently have an ability to easily evaluate any aspect of the internal processes reflected in the requested records. We are also unaware of any previous release to the public of these or similar records. See *Cmty. Legal Servs. v. HUD*, 405 F.Supp.2d 553, 560 (D. Pa. 2005) (because requested records "clarify

8

important facts" about agency policy, "the CLS request would likely shed light on information that is new to the interested public."). As the Ninth Circuit observed in *McClellan Ecological Seepage Situation v. Carlucci*, 835 F.2d 1282, 1286 (9th Cir. 1987), "[FOIA] legislative history suggests that information [has more potential to contribute to public understanding] to the degree that the information is new and supports public oversight of agency operations."

Disclosure of these records is not only "likely to contribute," but is certain to contribute, to public understanding of what arguments the Agencies considered and what sources it relied upon in proposing a total ban on recreational shooting at Bears Ears Monument. The public is always well served when it knows how the government conducts its activities. Hence, there can be no dispute that disclosure of the requested records to the public will educate the public about the Agencies' decision-making process with regards to this topic.

### D. Disclosure is Likely to Contribute Significantly to Public Understanding of Government Operations or Activities.

NSSF is not requesting these records merely for their intrinsic informational value. Disclosure of the requested records will significantly enhance the public's understanding of the Agencies' process for recommending the complete closure of recreational shooting at Bears Ears Monument, including whether the Agencies followed the requirements of the Dingell Act.

## II. NSSF has the Ability to Disseminate the Requested Information Broadly.

NSSF is dedicated to disseminating the information it obtains to its members and to the public, with a special focus on those interested in shooting sports and the regulation thereof. A key component of being able to fulfill this mission and educate the public about those topics is access to information about the Agencies' regulation of shooting sports on public land. NSSF has both the intent and the ability to convey any information obtained through this request to the public. NSSF publishes its findings regularly through the organization's website, https://nssf.org/. This work is frequently cited in newspapers and trade and political publications. NSSF intends to publish information from requested records on its website, distribute the records and expert analysis to its followers through social media platforms.

Through these means, NSSF will ensure:

(1) that the information requested contributes significantly to the public's understanding of the government's operations or activities;
(2) that the information enhances the public's understanding to a greater degree than currently exists;
(3) that NSSF possesses the expertise to explain the requested information to the public;

9

     (4)    that NSSF possesses the ability to disseminate the requested information to the general public; and

     (5)    that the news media recognizes NSSF as a reliable source in the field of government officials' conduct.

Public oversight and enhanced understanding of the Agencies' decision-making process is absolutely necessary. In determining whether disclosure of requested information will contribute significantly to public understanding, a guiding test is whether the requester will disseminate the information to a reasonably broad audience of persons interested in the subject. *Carney v. U.S. Dept. of Justice*, 19 F.3d 807 (2nd Cir. 1994). NSSF need not show how it intends to distribute the information, because "[n]othing in FOIA, the [agency] regulation, or our case law require[s] such pointless specificity." *Judicial Watch*, 326 F.3d at 1314. It is sufficient for NSSF to show how it distributes information to the public generally. *Id*.

### III. Obtaining the Requested Records is of No Commercial Interest to the Requester.

Access to government records, disclosure forms, and similar materials through FOIA requests is essential to NSSF's role of educating the general public. NSSF is a nonprofit trade association dedicated to transparency in firearms and shooting sports policy and it disseminates research, shares facts, and engages at the local and federal level and interacts with the media. Due to its nonprofit mission, NSSF has no commercial interest and will realize no commercial benefit from the release of the requested records.

Therefore, **NSSF first seeks waiver of any fees** under FOIA on the above significant public interest basis.

**In the alternative**, NSSF requests a waiver or reduction of fees as a representative of the news media. The provisions for determining whether a requesting party is a representative of the news media, and the "significant public interest" provision, are not mutually exclusive. As NSSF is a non-commercial requester, it is entitled to liberal construction of the fee waiver standards. 5 U.S.C.S. § 552(a)(4)(A)(iii), *Perkins v. U.S. Department of Veterans Affairs*, 754 F.Supp.2d. 1 (D.D.C. 2010). <u>Alternately and only in</u> the event the refuses to waive our fees under the "significant public interest" test, which Requester would then appeal while requesting the proceed with processing on the grounds that NSSF is a media organization, the Agency must explain any denial of treatment of NSSF as a media outlet. NSSF asks for a waiver or limitation of processing fees pursuant to 5 U.S.C. § 552(a)(4)(A)(ii) ("fees shall be limited to reasonable standard charges for document duplication when records are not sought for commercial use and the request is made by a representative of the news media…").

The Agency must address both of these requests for fee waiver in the event it denies one; failure to do so is *prima facie* arbitrary and capricious.

     In the interests of avoiding delay with back-and-forth, NSSF is willing to provisionally pay fees up to $200 in the event the Agency denies our fee waiver *requests* detailed, *infra*, as we appeal such a determination. Nonetheless, in this event, please provide an estimate of anticipated costs in the event that fees for processing this Request will exceed $200. Given the nature of the records responsive to this request, all should be in electronic format, and therefore there should be no photocopying costs (see discussion, *infra*).

**<u>Conclusion</u>**

If for any reason any portion of my request is denied, please provide me with the reasons for such denial in writing. Additionally, please provide me with the name and address of the agency or person to whom an appeal should be directed.

Thank you for your prompt attention in this matter. Please direct any inquiries, notices, or determinations to me at 203-426-1320 x220 or shelbybsmith@nssf.org.

Sincerely,

*[signature: Shelby B Smith]*

Shelby Baird Smith
Chief Litigation Counsel


SBS/cj